On Application nor Rehearing.
Watkins, J.
Appellants’ counsel invite our attention to the fact that the donation inter vivos to Mrs. Gibbons of §5850 is omitted from our calculation, and that its inclusion would make a difference in opponent’s favor.
They also insist that our opinion errs in returning the amount of the value of the donation of §100,000 to the community, and claim that it should be returned to the estate of the donor, according to R. O. O. 1504, 1505.
The section of the Code in which those articles are included treats “Of the Reduction of Donations Inter Vivos," etc., in general terms. In it no mention is made of separate or community property. The latter article reads thus:
“To determine the reduction to which the donations, either inter *341 vivos or mortis causa, are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos,” etc.
What then, is, or was, the property which belonged to the donor, John T. Moore, at the time of his decease? It is everywhere conceded and admitted that all of the property belonged to the community except the sum of 87000, specified as his separate estate. Of course, one-half, only, of the community property belonged to him at the time of his death ana formed a part 'of his succession. The community consists of the fruits and profits of the reciprocal labor and industry of both husband and wife and of the estates they may acquire during the marriage. R. O. O. 2402. This would be presumably the case as to the property of Mr. and Mrs. Moore, in the absence of proof to the contrary and independently of any admission. Then it necessarily follows that the 8100,000 of United States bonds were community property at the time the donation was made.
It can not be seriously contended that the donation had the effect of converting them into separate property for the purposes of reduction. If this be true, a donation by Mr. Moore to|his'wife of the whole of the community property, would, by the same process of reduction, have converted it into separate property, aiid divested her of her interest altogether; and viee versa.
Nor does this contention rest on argument alone, for the Code provides that the husband “ can make no conveyance inter vivos by a gratuitous title of the immovables of the community, nor of the whole, or of quota of the movables, unless it be for the establishment of the children of the marriage.” R. O. C. 2404.
While this article primarily applies to strangers and third persons, yet it may be applied with equal propriety to a partner in community. While “the husband is the head and master of the community,” and may dispose at will, or alienate its effects “by an onerous title,” he can not divest his wife of her interest “by a gratuitous title.”
The effect of this provision of law is, that the donation made by John T. Moore to his wife had the effect of conveying to her only the undivided community half interest in the bonds which he owned, and no more.
If, as counsel insist, the value of the bonds is “fictitiously added to Mr. Moore’s estate, and not to the community, the immediate *342 effect of it would be to transpose from the wife to her husband’s heirs $63,000, without any donation or testamentary disposition to that effect.
Had the donation been made to a stranger, the rule would have been just the same. Had Mr. Moore made no donation at all, and the $100,000 of government bonds remained on hand, in kind, certainly they would not have been inventoried as his separate property at his death; then, in what manner an excessive donation of them can convert them into separate property, is not easily perceived.
The quotation counsel for opponents makes from page 541 of 40th Annual — Succession of Moore — announces no adverse doctrine. Its true meaning is that, “the mass of the succession must be composed of the separate property of the deceased, of his share of the common property, and of his share in the value of the effects donated at the time of his death.” We have supplied a manifest ellipsis by adding the italicised words.
It was incorrect to have omitted from computation the amount of the donation to Mrs. Gibbons of $5850. We think it best that we should recast our calculation and include it.
Total assets of community ----- $284,090 05
Value of government bonds ----- 126,000 00-
Donation to Mrs. Gibbons - - - - 5,850 00
Aggregating.......$415,940 05
Community debts deducted ----- 11,480 66
Net community assets, one-half - $404,459 39
Widow’s one-half ------ $202,229 69¿
Net amount of deceased’s estate is composed of one-half of community assets of - $202,229 691
His separate estate - - - 7,000 00
Aggregating.......$209,229 69¿
Disposable portion, one-third - 69,743 23£
The legitime will be _____ $139,486 462
*343 Of this sum each one of the nine heirs will be entitled to one-ninth or $15,498.49, and to each of said nine heirs’ shares the usufruct of the widow attaches.
This calculation has slightly altered and increased the respective shares of the widow and heirs, and our decree must be altered so as to correspond therewith; but for this purpose a rehearing is deemed unnecessary.
It is therefore ordered and decreed that our former decree be set aside and recast, and that it is further ordered and decreed that the judgment appealed from be so amended as to fix the disposable portion at the sum of $69,743.23; the amount of the legitime of the heirs at $139,486.46; and the respective shares of the heirs at $15,498.49.
It is finally ordered and decreed that as thus amended said judgment and decree appealed from be affirmed, and that all costs be taxed against the succession.
Fenner, J., takes no part, not having participated in the original decision.